1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Vince Chhabria, Magistrate Judge

4

5   SURGICAL INSTRUMENT SERVICE    )
    COMPANY, INC.,                 )
6                                  )
               Plaintiff,          )
7                                  )
    vs.                            )   No. C 21-03496-VC
8                                  )
    INTUITIVE SURGICAL, INC.,      )   Related cases:
9                                  )
               Defendants.         )   No. C 21-03825-VC
10  _____  )   NO. C 21-05198-VC
                                       NO. C 21-05266-VC
11
                                       San Francisco, California
12                                     Wednesday, August 11, 2021

13
       TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
14              RECORDING 2:57 - 3:30 = 33 MINUTES

15  APPEARANCES:

16  For Plaintiffs:
                                   Hausfeld, LLP
17                                 600 Montgomery Street
                                   Suite 3200
18                                 San Francisco, California
                                    94111
19                         BY:  BONNY E. SWEENEY, ESQ.

20                                 Ropes Gray, LLP
                                   191 North Wacker Drive
21                                 32nd Floor
                                   Chicago, Illinois 60606
22                         BY:  RICHARD T. MCCAULLEY, JR.,
                                    ESQ.
23

24

25             (APPEARANCES CONTINUED ON NEXT PAGE)

2

1 | <u>APPEARANCES</u>:   (Cont'd.)

2 | For Plaintiffs:

3 |                              Spector Roseman & Kodroff, P.C.

4 |                              2001 Market Street, Suite 3420 Philadelphia, Pennsylvania 19103

5 |                          BY:  JEFFREY J. CORRIGAN, ESQ.

6 |                              Cohen Milstein Sellers & Toll

7 |                              11780 U.S. Highway One Suite N500

8 |                              Palm Beach Gardens, Florida 33408

9 |                          BY:  MANUEL J. DOMINGUEZ, ESQ.

10 | For Defendants:

11 |                              Skadden Arps Slate Meagher & Flom, LLP One Manhattan West

12 |                              New York, New York 10001

                       BY:  KAREN HOFFMAN LENT, ESQ.

13 |                              MICHAEL MENITOVE, ESQ.

14 |                              Skadden Arps Slate Meagher & Flom, LLP

15 |                              1440 New York Avenue, N.W. Washington, D.C. 20005

16 |                        BY:  MICHAEL S. BAILEY, ESQ.

17 | Transcribed by:              Echo Reporting, Inc. Contracted Court Reporter/

18 |                              Transcriber echoreporting@yahoo.com

19

20

21

22

23

24

25

3

1  <u>Wednesday, August 11, 2021</u>                    <u>2:57 p.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE CLERK:  Now calling 21-CV-3496, Surgical

5  Instrument Service Company, Incorporated versus Intuitive

6  Surgical, Inc. and 21-CV-3825, Larkin Community Hospital

7  versus Intuitive Surgical, Inc. and 21-5198, Franciscan

8  Alliance, Incorporated, et al., versus Intuitive Surgical,

9  Inc., and 21-CV-5266, Kaleida Health versus Intuitive

10  Surgical, Inc.

11      Will Plaintiff -- will counsel for the Plaintiff please

12  state your appearances?

13          MR. MCCAULLEY (Zoom):  Good afternoon.  Richard

14  McCaulley on behalf of Surgical Instrument Service Company.

15          THE COURT:  Hello.

16          MR. CORRIGAN (Zoom):  Good afternoon, your Honor.

17  Jeff Corrigan on behalf of the collective Hospital

18  Plaintiffs.  That would be Larkin, Franciscan, and Kaleida.

19          THE COURT:  Hello.

20          MS. SWEENEY (Zoom):  Good afternoon, your Honor.

21  Bonny Sweeney also on behalf of the collective Hospital

22  Plaintiffs, the class action Plaintiffs.

23          MR. DOMINGUEZ (Zoom):  Good afternoon, your Honor.

24  Manuel Dominguez on behalf of the collective Hospital

25  Plaintiffs as well.

4

1        THE CLERK:  For the Defendant?

2        MS. LENT (Zoom):  Good afternoon, your Honor.

3 Karen Lent on behalf of Intuitive Surgical.

4        MR. BAILEY (Zoom):  Good afternoon, your Honor.

5 Michael Bailey on behalf of Intuitive Surgical.

6        THE COURT:  Hello.

7        MR. MENITOVE (Zoom):  And good afternoon, your

8 Honor.  Mike Menitove on behalf of Intuitive Surgical.

9        THE COURT:  Hi.  Okay.  I'm confused.  Let me flip

10 through these case management statements real quick here.

11 Okay.  So we -- so how many cases are before me right now?

12        MR. MCCAULLEY:  I believe there are four total,

13 your Honor.

14        THE COURT:  Two?

15        MR. MCCAULLEY:  I believe it's a total of four.

16        THE COURT:  Four?

17        MR. MCCAULLEY:  Yes.

18        THE COURT:  Okay.  So, and -- and one was filed by

19 Surgical Instrument Service Company?

20        MR. MCCAULLEY:  Yes, your Honor.

21        THE COURT:  And then the three others were filed

22 by the Hospital Plaintiffs?

23        MR. CORRIGAN:  That's right, your Honor.

24        THE COURT:  Why three?  Are the three -- those

25 three others, are they class actions?

5

1          MR. CORRIGAN:  Yes, your Honor.

2          THE COURT:  Why three class actions?

3          MR. CORRIGAN:  The were filed separately.  The

4   Larkin case was filed first.  It was about six weeks later

5   the Franciscan case was filed, and several days after that,

6   the Kaleida case was filed.  So they were filed piecemeal,

7   not all together.

8          THE COURT:  But all by the same lawyers?

9          MR. CORRIGAN:  No.

10          THE COURT:  Oh.

11          MR. CORRIGAN:  One thing we're attempting to do,

12   which we hope to do very soon, is consolidate these cases,

13   your Honor.  We intend to -- we've circulated a motion or a

14   stipulation to defense counsel seeking to consolidate these

15   cases, which means they would go forward as one.  They would

16   be one docket in which all the activity would be.  We'd have

17   a new case caption, and we would propose a motion for lead

18   counsel and proceed that way.  So this would formally move

19   forward the three cases as one, which would be beneficial

20   for the case on the Plaintiffs' side.  I believe it would

21   also be beneficial for the Defendant in that they wouldn't

22   be fighting these piecemeal but one block of the three

23   Hospital Plaintiffs moving forward in the class action.

24          THE COURT:  Okay.  And the -- the -- the Surgical

25   Instrument Service Company case is not a proposed class

6

1  action, right?

2           MR. MCCAULLEY:  That's correct.

3           MR. CORRIGAN:  That's correct.

4           THE COURT:  Okay.  And then but there are cases

5  elsewhere in this court as well, in the Northern District of

6  California?

7           MR. CORRIGAN:  I don't believe so.

8           MS. LENT:  Hello, your Honor.

9           MR. CORRIGAN:  I'm sorry.  Go ahead.

10          MS. LENT:  The additional cases that are pending

11 against Intuitive are in Florida.  One is in the Northern

12 District of Florida, and the other is in the Middle District

13 of Florida.

14          THE COURT:  And who are those by?

15          MS. LENT:  The one in the Northern District of

16 Florida is by Restore Robotics, and the one in the Middle

17 District of Florida is by Rebotics Repairs.

18          THE COURT:  Okay.  And who are they?  Like what's

19 their -- what's their place in this -- in this --

20          MS. LENT:  Sure.

21          THE COURT:  -- in this market?

22          MS. LENT:  Sure.  They are instrument service

23 providers.  They are the companies that have -- one is like

24 SIS, and that is Restore Robotics is similarly situated to

25 SIS.  Rebotics is as well, but it has a patented technology

7

1  to override the usage limits on Intuitive's instruments.

2          THE COURT:  Okay.  And they're all antitrust

3  cases?

4          MS. LENT:  Correct.

5          THE COURT:  Okay.  And the Florida cases, under

6  what law -- what law is being asserted?  Is it federal and

7  state law?

8          MS. LENT:  Federal law.

9          THE COURT:  Okay.  And is it the same issues

10  presented?

11          MS. LENT:  Correct, the same claims for exclusive

12  dealing, time, monopolization.

13          THE COURT:  All right.

14          MR. MCCAULLEY:  Your Honor, and the -- and the

15  Plaintiff, Surgical Instrument, also has a Lanham Act claim,

16  and I would say our claims are different in that we're

17  situated differently in the value chain and would have a

18  completely different damages case, but I would agree that at

19  a high level the issues are similar.

20          THE COURT:  Okay.  Obviously, however the cases

21  come out in the Florida courts, the -- the results would not

22  be binding on the Plaintiffs in these four cases, right?

23  So, you know, every other sentence in the -- in the

24  Defendants' portion of the case management statement was

25  advocating for a stay  of these cases, but I don't -- I

1  don't really understand why we would do that.  I mean, they

2  -- stay until when?  I mean, it's not like -- it's not like

3  the result in those cases would require us to call the

4  question in these cases, right?  I mean, these Plaintiffs

5  have the right to pursue their antitrust claims, and even if

6  a District Court -- a jury or a District Court in Florida

7  were to conclude that it's not an antitrust violation, that

8  wouldn't be binding on -- on these Plaintiffs, and they

9  would have the right to pursue their antitrust claims,

10 right?

11         MS. LENT:  I think that's mostly correct, your

12 Honor.  There are issues of antitrust injury and antitrust

13 standing that could -- that could result in being preclusive

14 for these Plaintiffs, and I --

15         THE COURT:  But how could that be?  I mean, these

16 Plaintiffs are not involved in that case, right?  So, I

17 mean, in those cases -- in Florida, if somebody were to

18 conclude that the Plaintiffs in those cases did not suffer

19 antitrust injury, number one, the facts may be different.

20 You know, the injury may be different in this case.  And,

21 number two, even if the injury is not different in this

22 case, I might disagree that the Plaintiffs have not suffered

23 antitrust injury, right?

24         MS. LENT:  Well, it's a slightly different

25 argument than that, your Honor, and we would welcome the

9

1   opportunity to brief that.  We have agreed on a briefing

2   schedule with the Plaintiffs to brief the motion for stay.

3   I can't get into all of the details because -- on the public

4   record, unfortunately, because much of the information that

5   we will rely on is under seal.  But, essentially, these

6   Plaintiffs are relying on technology that is -- is used by

7   the -- by the Florida Plaintiffs, and if that technology and

8   the -- the work that those Plaintiffs are doing is not

9   lawful, then there's an antitrust injury issue for these

10  Plaintiffs here.

11          THE COURT:  Yeah, but these Plaintiffs may

12  disagree with whatever ruling is issued in Florida, right?

13  I mean, I just -- it doesn't -- I mean, obviously, you're

14  perfectly entitled to file a motion to stay, and seems like

15  you're pretty enthusiastic about it based on the number of

16  times you mentioned it in your statement, but I found myself

17  really scratching my head about it, wondering how it would

18  be appropriate to stay this case pending the outcome of

19  those other cases involving other Plaintiffs in Florida.

20          MS. LENT:  Your Honor, I think it would become

21  more clear to you when we are able to file papers that quote

22  some of the -- the protected information that I just am not,

23  unfortunately, at liberty to reveal on the public record

24  because it's subject to protective order in those cases.

25          THE COURT:  Okay.  That's fine.  And it may be

1 subject to protective order in those cases, but I hope you

2 read the provisions of my standing order about sealing

3 because, you know, far more stuff gets sealed in the federal

4 courts than should be sealed.  And I -- if you -- if you --

5 you know, the mere fact that something is covered by a

6 protective order does not justify sealing it on the docket.

7 So when you file your motion for a stay, you're going to

8 need to be very careful about what you think should be

9 sealed and what should not.  And if you -- you know, if you

10 try to file a bunch of stuff under seal that should not be

11 under seal, you'll get sanctioned.

12         MS. LENT:  Well, I appreciate that, your Honor,

13 and I am not referencing Intuitive confidential information.

14 I'm referencing confidential information of the parties and

15 third parties in the Florida cases, and so it's our

16 obligation to them under the protective order to not reveal

17 that.

18         THE COURT:  I understand.  But you also need to

19 confer with them before you file your motion, to determine

20 what truly deserves to be concealed from the public, right,

21 because just because it's covered by a protective order does

22 not mean it can be sealed.  And, you know, you can't -- you

23 can't file it -- you can't file it under seal if there's not

24 a compelling reason to file it under seal.

25         MS. LENT:  Understood, your Honor.  And we will do

11

1  that.

2         THE COURT:  In any event -- and -- and you're

3  perfectly free to file the motion, but we'll -- I think we

4  should go ahead and set a schedule.

5     Now, on the issue of scheduling, you know, I started

6  looking at these schedules, and my head started spinning.  I

7  mean, shouldn't the -- shouldn't the schedule -- and maybe

8  they are, but shouldn't the schedule be on the same track

9  for all four of these cases?

10         MS. LENT:  We believe they should.

11         THE COURT:  So it will be -- it will be two cases

12  after the motion -- assuming the motion to consolidate is

13  filed and that that motion is granted.

14         MR. CORRIGAN:  Yes, your Honor, that's true.  So

15  the -- the Exhibit A that we have filed with our case

16  management statement -- and that's the three Hospital

17  Plaintiffs -- that would presumably be for those three

18  cases, and we've negotiated to some extent with Defendants

19  on the schedule, and they've triggered their motion to stay.

20     So, it wouldn't be the four cases.  If -- if things

21  went the way we think they should go and you think they

22  should go, then the three hospital cases would be on the

23  same track and the same schedule.

24         THE COURT:  Well, why shouldn't the -- and then

25  there would be one hospital case.  Why shouldn't the

12

1 hospital case be on the same track as the SIS case?  Is it

2 because the hospital case is just going to take a lot longer

3 to litigate because it's a proposed class action?

4         MR. CORRIGAN:  We're not saying it shouldn't be,

5 your Honor, for -- for most part.  Certainly for discovery

6 we think it makes a lot of sense to coordinate discovery.

7 But your Honor is correct.  The class action vehicle may

8 take some time, and Mr. McCaulley's SIS case does not

9 involve that.  So they may veer off there at some point.

10 But certainly for discovery purposes, it very likely makes

11 sense to coordinate with the SIS case.

12         MR. MCCAULLEY:  And, your Honor, from SIS's

13 perspective, we did try to coordinate and perhaps did a poor

14 job of it, but --

15         THE COURT:  No.  It may be that I just didn't --

16 it was just too confusing to look at all these different

17 documents.

18         MR. MCCAULLEY:  We could certainly go back and

19 work together.  What SIS proposed was to stay on the same

20 track with the hospital cases I think through expert

21 discovery.  And then when the class certification issues --

22 where they came in their schedule looked logical for us, and

23 if they've agreed to it, obviously, we don't mind.  But then

24 at that point we would diverge because we're not a -- we're

25 not a class action.  But absolutely SIS agrees coordination

13

1   -- and I think Intuitive does as well -- coordination of the

2   schedules up to the class specific briefing makes a lot of

3   sense.

4         THE COURT:  Okay.  So that -- so that makes sense

5   to me, and so I'm looking at the schedule that you

6   submitted.  So then there are competing schedules.  So I

7   have to be flipping back and forth between these competing

8   schedules.

9      The Defendants' is not helpful because it's based on an

10  assumption that there's going to be a stay, and I -- based

11  on what I know now, that seems very unlikely.  So I think

12  what I will do, if -- if this makes sense to you all, I will

13  adopt the Plaintiffs' proposed schedule in the SIS case, and

14  then I'll ask you -- in the Hospital case, I'll ask you to

15  submit a stipulation that conforms to that schedule and also

16  builds in deadlines for filing a motion to consolidate and

17  all that stuff, right.  We got to get that -- get that stuff

18  going too.

19        MR. CORRIGAN:  Yes, your Honor.  I think we'll --

20  we should be ready to -- again, the stipulation on

21  consolidation is with Defendants right now -- Defendant,

22  excuse me.  And we're waiting for any edits they might have.

23  It's the type of thing we've filed in every class action

24  we've ever had.

25        THE COURT:  Okay.

14

1      MR. CORRIGAN:  So it's completely

2 noncontroversial.  The lead counsel motion should be shortly

3 thereafter, but that makes sense.  I think Mr. McCaulley's

4 schedule, as he said, is very close to ours.  So I think all

5 we're probably going to do is we'll take a close look at his

6 but just build in the class action schedule into that, and I

7 think that shouldn't be too much trouble.

8      THE COURT:  Track -- track the SIS schedule until

9 you get to the point of dealing with class certification.

10 That's -- that makes sense.

11    So I'm looking at the Plaintiff's proposed schedule in

12 the SIS case, and that looks fine.  What I'll tell you,

13 though, is why don't you put -- I'm going to ask you to

14 submit it as -- submit it as a stip and submit both

15 schedules as stips, right.  And I'm -- and what I'll tell

16 you -- rather than rattle off all these dates, and what I'll

17 tell you is that the schedule looks good but for the -- for

18 the summary judgment hearing and hearing on any Daubert

19 motions, you should push that back by about two weeks, and

20 then what I would propose is let's not have a trial date and

21 a pretrial conference date.  Let's have a further case

22 management conference about four weeks after the hearing on

23 summary judgment, and we'll figure out, you know, when trial

24 should be -- figure out what's left of the case and figure

25 out when trial should be at that point.  Okay?

1          MR. MCCAULLEY:  That makes sense, your Honor.

2          MR. CORRIGAN:  Agreed, your Honor.

3          THE COURT:  So why don't you -- why don't you

4  submit -- why don't you all submit schedules that conform to

5  that.

6          MR. MCCAULLEY:  Very well.

7          THE COURT:  Why don't you do that by Friday.

8          MS. LENT:  Your Honor, if I may, the schedule that

9  I'm looking at that was submitted in SIS doesn't have dates

10  for a motion to dismiss.  We actually filed our motion to

11  dismiss last Friday, the 6th.  We don't have a consolidated

12  complaint from the class Plaintiffs yet on which to move,

13  and we would ask that -- that we not engage in discovery

14  until we've moved to dismiss the complaint.  We think the

15  issues, if not dismissed, would be greatly narrowed.  And

16  the SIS schedule calls for, you know, beginning discovery

17  essentially in -- in two weeks.

18          THE COURT:  Okay.  What --

19          MS. LENT:  Before we have a consolidated complaint

20  even from the class Plaintiffs.

21          THE COURT:  Well, you filed your motion to dismiss

22  in the SIS case?

23          MS. LENT:  We did.

24          THE COURT:  And when did you notice the hearing

25  for?

1          MS. LENT:  We have not noticed -- we noticed it

2   for the 23rd of September actually.

3          THE COURT:  Okay.  When did you file it?

4          MS. LENT:  The 6th of August, just five days ago.

5          THE COURT:  Okay.  I mean, I -- and these -- these

6   Florida cases are already past the motion to dismiss stage,

7   right, and they're like close to summary judgment or

8   something?  Am I right about that?

9          MS. LENT:  Correct.  We're right in the middle of

10  expert discovery in those cases.

11         THE COURT:  Uh-huh.  I assume the fact that those

12  cases have moved forward is going to make it easier to do

13  discovery in these cases, agreed?

14         MS. LENT:  It should, your Honor.  We -- we would

15  need to get the protective order in this case aligned

16  substantially with the protective order in the Florida cases

17  in order to make that efficient, but for that set of

18  documents that we have produced and that have been produced

19  to us in those cases, I think once we -- once we have a

20  protective order aligned and we've communicated with third

21  parties about production of those documents -- because right

22  now, the Florida protective orders only provide for use of

23  documents produced in those particular cases.  We have been

24  working with the Plaintiffs in those cases to modify the

25  protective order so that we could produce their documents to

17

1 these Plaintiffs in California, but there are third party

2 productions that we need to handle as well.  So there is

3 some work that would need to be done to get that record to

4 the Plaintiffs here, but yes.

5        THE COURT:  I don't -- by the way, I don't mind --

6 I know we have rules that -- we have this model protective

7 order, and we ask the parties to follow the model protective

8 order to the extent possible.

9     I don't mind modeling a protective order on -- off of

10 what has been done in Florida if that makes it easier for

11 you all.  However, the one thing that I would mind is if the

12 protective order in Florida allowed parties to file stuff

13 under seal simply because it was designated confidential

14 pursuant to a protective order.  I don't know what -- do you

15 know if the Florida protective order is like that?  I mean,

16 I think there are still some courts who are in the Dark Ages

17 on that and allow basically the parties to file under seal

18 anything that they want.

19     Do you know what the protective order says?

20        MS. LENT:  I -- I don't have in mind exactly the

21 provision of the protective order with respect to that

22 issue, your Honor.

23        THE COURT:  Okay.  Well, that's -- that's

24 something that I would definitely reject if --

25        MS. LENT:  Okay.

18

1      THE COURT:  -- if it had that.  You have to make a

2 separate and much stronger justification for filing

3 something under seal than the mere fact that somebody has

4 designated something confidential under a protective order.

5      MS. LENT:  Understood, and we'll take a look at

6 that and make sure that if it's not in accordance with what

7 you've said, we -- we modify it.

8      THE COURT:  Okay.

9      MR. CORRIGAN:  Your Honor, I'm sorry.  Ms. Lent

10 just pointed out one other difference between the SIS and

11 the Hospital schedules, and she mentioned -- we had the

12 three cases filed, and there is a date -- September 10th we

13 proposed -- for filing the consolidated amended class action

14 complaint.

15      So Defendants would not be in a position to move to

16 dismiss until they've had a chance to digest that complaint.

17 So we've proposed September 10th.  So that would be a bit of

18 a different track than the SIS motion to dismiss schedule

19 would be on.

20      THE COURT:  Well, I -- my inclination, I think,

21 would be to say that it's fine to hold off on discovery

22 until after the SIS motion to dismiss is adjudicated for --

23 because, given what's happened in the Florida case, I think

24 it's going to allow you to accelerate the discovery process

25 in this case and sort of make up for lost time, such that a

1 bit of a delay in discovery is not going to be that big of a

2 deal in terms of getting these cases adjudicated.

3       MR. CORRIGAN:  Your Honor, we've already served

4 Defendant with requests for production, document requests,

5 which basically cover everything that was produced or

6 created in the two Florida cases.  So that's already been

7 served.  So we are ready to go on discovery, at least in

8 terms of what's been produced and created in the Florida

9 cases.

10       THE COURT:  Okay.  But I'm -- I'm -- I'm fine, you

11 know, saying that discovery can -- can hold -- we can hold

12 off on discovery in these cases until the SIS motion to

13 dismiss has been adjudicated.

14       MR. MCCAULLEY:  SIS is fine with that, your Honor.

15 Could we still have the initial disclosures?  Because we're

16 somewhat into a gray veil about how many depositions we'll

17 need.  We've said according to the rules, but I haven't seen

18 their initial -- we'd be happy to do that if they would.

19       THE COURT:  I was going to suggest why not just do

20 the initial disclosures.

21       MR. MCCAULLEY:  Thank you, your Honor.

22       MS. LENT:  And, your Honor, are you proposing then

23 that we proceed on separate tracks for the motions to

24 dismiss in the two cases?

25       THE COURT:  I think probably.  I mean, I don't --

20

1  if you think that creates -- I mean, I'm assuming that the

2  answer is going to be similar as to both -- I mean, maybe

3  not.  Maybe the antitrust injury inquiry will be very

4  different.  I don't know.  But, you know, I don't have

5  strong feelings about it, but I was assuming that, yes, we

6  would just plow ahead with the SIS motion to dismiss and

7  adjudicate that.

8          MS. LENT:  I think the motions will be very

9  similar.  There will be some different arguments, but it --

10 it seems less efficient to us to brief those -- the similar

11 issues twice and to have a hearing in front of you when a

12 lot of the --

13         THE COURT:  So you would file a consolidated

14 motion to dismiss both against SIS and the Hospitals, is

15 that what you're saying?

16         MS. LENT:  We could do it that way.  We certainly

17 could.  We could file a -- a motion to dismiss that -- that

18 addresses common issues and then have, you know, a section

19 on each that identifies the -- the distinct issues in each

20 case to the extent there are any.

21         THE COURT:  That's going to -- that would delay

22 things.  That would cause significant further delay in the

23 case, right, if we -- if we did that?

24         MS. LENT:  Well, I'm not sure it would be

25 significant.  I think it could be a couple of months, but --

21

1 but that's --

2          THE COURT:  That sounds significant to me, but

3 maybe for -- for folks who litigate these kinds of cases all

4 the time, that's a drop in the bucket.

5          MS. LENT:  Well, we've been litigating with

6 Restore for two and a half years.  So it doesn't feel quite

7 as significant given where we are in those cases.

8          MR. MCCAULLEY:  Your Honor, it would be a

9 significant delay from SIS's perspective.  We've actually

10 already started working on the response and the opposition

11 to the motion to dismiss.  We'd like to proceed on the

12 schedule that we're on.

13          THE COURT:  Okay.  Let's do that.

14          MS. LENT:  And then, your Honor, if there were

15 common issues --

16          THE COURT:  Frankly, we're -- we've got a hearing

17 scheduled on SIS's motion, the -- the motion to dismiss the

18 SIS case, before you would even have to file a motion to

19 dismiss in the Hospital case if I -- if my calculations are

20 correct.

21          MS. LENT:  That's correct.

22          THE COURT:  So, yeah, let's -- let's stick with

23 that schedule.  And then I'm sorry, Ms. Lent.  I interrupted

24 you I think.  What else were you going to say?

25          MS. LENT:  No, I think that was -- I think that

22

1  was all.

2          THE COURT:  Oh, okay.  All right.  So are we kind

3  of clear on how we're proceeding, and is there anything else

4  we need to discuss right now?

5          MR. CORRIGAN:  Your Honor, I would like to mention

6  that I -- I mentioned the sort of stipulation/motion for

7  consolidation ands that we're going to file a motion for

8  lead counsel.  It will look very similar to the one that you

9  saw and ultimately approved in the Align case before this

10 Court.

11         THE COURT:  Okay.

12         MR. CORRIGAN:  And I wanted to ask you if there

13 was anything in particular -- we've filed many lead counsel

14 motions, and we've looked at the Align one, and we looked at

15 the follow up in the Align case when you asked for some

16 cases where lead counsel -- or interim lead counsel had been

17 appointed before class had been certified.  But I wanted to

18 just give you a chance to let us know what you'd like in

19 that co-lead counsel motion before we file it so we make

20 sure cover what you need to know.

21         THE COURT:  Well, I mean, you know, sort of

22 similar to the questions I was asking in the Align case, I

23 mean, I -- I often find myself wondering why it is necessary

24 to appoint interim lead counsel in -- in any case.  So, you

25 know, if you could include a good explanation of why it

1  makes -- why it -- why it's helpful to appoint interim lead

2  counsel for the proposed class when there's been no class

3  certification motion yet and why it -- and to the extent

4  that it's generally helpful sometimes, why is it necessary

5  in this case and why can't you just proceed like -- like the

6  typical class action, which is you just -- you file the

7  class action complaint, and you pursue it as lawyers until

8  you get to the class certification stage, without having

9  been appointed interim lead counsel?  You know, and -- and

10 so if -- I find oftentimes that lawyers are not terribly

11 transparent in answering those questions, and it may have to

12 do with fighting in the background over money or something

13 like that, but I would love to see a coherent explanation

14 for why it's necessary to appoint interim lead counsel in

15 the class action.

16         MR. CORRIGAN:  We will certainly endeavor to -- to

17 do that, your Honor.  And in my experience -- and I've got a

18 fair amount of experience in this area -- it would be

19 atypical not to appoint interim lead counsel before class.

20 And the --

21         THE COURT:  Well, it's not -- that's incorrect as

22 it relates to class actions generally.  Are you saying these

23 particular types of class actions?

24         MR. CORRIGAN:  The antitrust class actions that I

25 have been involved with typically always have interim lead

24

1  counsel appointed before class cert.

2          THE COURT:  Why?

3          MR. CORRIGAN:  The basic reason is just there's so

4  much activity.  There is so much work that goes into these

5  cases before you get to class cert.  I mean, discovery takes

6  place, and somebody's making decisions.  Somebody is making

7  decisions.  Somebody is tracking lodestar.  Somebody is

8  negotiating with Defendants.  And, look, we could do it

9  without that, but having a judge stamp you as interim lead

10 counsel removes all doubt.  It removes all doubt now, and it

11 removes all doubt in the future if other cases are filed and

12 all of a sudden you have an interim co-lead counsel fight,

13 you know, a year from now, whereas --

14         THE COURT:  So it's basically to give you -- to

15 sort of establish yourselves with a leg up in a potential

16 future lead counsel fight or, to put it another way, it

17 might be to stave off other people who might come in to try

18 to fight to be lead counsel?

19         MR. CORRIGAN:  That's one -- that's one way of

20 putting it.  I mean, in terms of -- it is beneficial to us,

21 but it's also beneficial, we would say, to the Court and the

22 Defendant.  I don't think the Defendants want a lead counsel

23 fight a year into this case, and I don't think the Court

24 wants that either.

25      Once you -- once you establish the interim co-lead

25

1 counsel -- and, look, there's no -- it's not in stone.  If

2 you were displeased with interim co-lead counsel, you could

3 change your mind.  That has not happened to the co-lead

4 counsel firms that we are working with, but it also just

5 puts your stamp of approval for all the -- the great amount

6 of work that takes place before class cert is briefed.

7 There are many many negotiations on every front and -- and

8 everything under the sun.

9     So the cases I've worked on, we've wrapped up a case on

10 interior molded doors in the Eastern District of Virginia

11 not too long ago, and we briefed class cert, but it was

12 never decided  So here we -- we were named interim co-lead

13 counsel very early in the case, and it applied to

14 everything, including settlement discussions, mediation and

15 everything else.

16     So we -- we never quite got to the official point where

17 we had to be named lead counsel for a class, but there was

18 an immense amount of work that went on before that, and

19 Defendants knew who they were dealing with.  The Court knew

20 who he was dealing with, and other counsel knew who they

21 were dealing with.  So it's a very clarifying moment in a

22 case, and we think that it just benefits all.

23     And I'm not going to say you're wrong that it gives us

24 a leg up, but we should have a leg up.  We've been

25 litigating this case for a year.  We deserve a leg up.  And

26

1  now you have to change courses and now you have to deal with

2  other counsel, and it makes sense from every standpoint that

3  we have seen, and we've done a lot of these cases, to name

4  interim co-lead counsel fairly early in the case, and it

5  just establishes a plan going forward.

6       Like I said, your Honor, if you had particular

7  concerns, we've had -- other case I had a judge one time

8  tell me, you know, he said "I want one phone call.  I want

9  one phone call."  And that was it.  He had one phone call.

10 We had multiple co-lead counsel, but there was one phone

11 call for the judge, and that's how we proceeded.  And God

12 forbid we do something wrong and you don't like the interim

13 co-lead counsel we've appointed, not in stone.  You can

14 change your mind.  Now, we hope you don't, and we'll make

15 every effort to make sure you don't, but I think it benefits

16 all, and I think Defendants -- we never get any push back on

17 lead counsel motions from Defendants because they always

18 want to know who they're dealing with.  We're not going to

19 be dealing with somebody today and somebody else six months.

20 This is the people.  These are the guys we're going to be

21 dealing with, and I think the Court generally has taken

22 comfort from that as well.

23       THE COURT:  Okay.  Well, I'm happy to entertain

24 the motion.  And -- all right.  Anything else we can discuss

25 right now?  No?  Okay.  Thank you very much.

27

1          MR. CORRIGAN:   Thank you, your Honor.

2          MS. LENT:   Thank you.

3      (Proceedings adjourned at 3:30 p.m.)

28

<u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
the official electronic sound recording provided to me by
the U.S. District Court, Northern District of California, of
the proceedings taken on the date and time previously stated
in the above matter.

I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this hearing was taken; and, further, that I am not
financially nor otherwise interested in the outcome of the
action.

Echo Reporting, Inc., Transcriber

Wednesday, August 18, 2021